THE PEOPLE *ex rel.* The McLean County Bar Association, Relator, *vs.* J. B. JISKRA, Respondent.

*Opinion filed June 11, 1937.*

FRED W. WOLLRAB, WILLIAM J. BACH, WALTER E. WILL, GEORGE K. FOSTER, RICHARD F. DUNN, WAYNE C. TOWNLEY, and W. B. LEACH, for relator.

HAL M. STONE, and BRANSON WRIGHT, for respondent.

Mr. JUSTICE ORR delivered the opinion of the court:

The McLean County Bar Association has excepted to the report of the commissioner of this court wherein he recommended, upon his findings, that respondent J. B. Jiskra be not disbarred. Relator had asked for the disbarment because respondent had allegedly embezzled money of a client and had filed false affidavits in certain court proceedings.

The complaint alleged that Lillie McGuire had come into the possession of $1000 from the Modern Woodmen of America because of the supposed death of her husband in April, 1930; that in June, 1931, she delivered this $1000 to respondent with instructions to invest the same in an United States government bond, as she had reason to believe her husband was not dead and wanted the insurance money available for repayment in case he was found alive; that later, when the husband was found alive, the insurer

demanded repayment of the $1000, and Mrs. McGuire endeavored to obtain the government bond from respondent; that she was then advised by respondent that the money had been invested in a $1000 bond of the Stevens Hotel Company, worth at the time about $330. Mrs. McGuire claimed she did not authorize respondent to invest the money in anything other than a government bond and that respondent failed and refused to return the money or the government bond to her. The Modern Woodmen instituted suit against Mrs. McGuire and respondent is alleged to have filed in the cause a false affidavit of merits stating that the insurance money entrusted to him by Mrs. McGuire had been invested in securities issued and sold by the Harris Trust and Savings Bank, and the money was lost as the result of this investment. The case proceeded to a judgment against Mrs. McGuire and thereafter respondent is alleged to have told her it would be necessary for her to sign some papers. She testified she went to respondent's office and he placed certain papers before her for her signature; that she signed them without reading their contents or being advised thereof by respondent; that she in fact signed a petition in bankruptcy although she had no desire to file such a petition and no knowledge that she had done so until she had received notice that she had been adjudged a bankrupt; that in company with her brother she called upon respondent and told him that she did not desire to take bankruptcy and instructed him to have the proceeding dismissed. Respondent then prepared a petition to dismiss, which Mrs. McGuire signed. However, before leaving the office Mrs. McGuire read the petition and discovered it contained false statements in that it alleged, as grounds for dismissal, that friends and relatives of Mrs. McGuire were making the necessary arrangements to finance the judgment of the Modern Woodmen. Respondent was told by them the statement was false and he was instructed not to file the petition. Notwithstanding

this, the petition to dismiss was filed by respondent in May, 1933. This petition contained a statement that the proceeds of the insurance had been invested by Mrs. McGuire in a first mortgage bond of Stevens Hotel Company, issued by the Harris Trust and Savings Bank, and that the investment was lost. It was alleged that respondent, at the hearing before the board of managers, testified on oath that the insurance money had been first invested by him in a $1000 United States bond and that afterwards, but prior to filing of the bankruptcy petition and the affidavit of merits in the Modern Woodmen suit, the funds were partially invested in securities issued by the Liberty Securities Company of Bloomington and the remainder of the funds were invested in a Stevens Hotel Company bond. In so far as the relator is informed the first occasion on which respondent claimed or asserted the funds had been so invested in securities of the Liberty Securities Company, was upon the hearing of the complaint of Mrs. McGuire against respondent before the board of managers.

The answer of respondent to the information stated that Mrs. McGuire collected the $1000 insurance, deposited it in the bank at McLean and did not then deliver it to respondent; that some time in April or May, 1931, she received communications from her husband and without disclosing such information to respondent, wanted to know what would be required of her if her husband should return; that for various reasons she did not want to leave the money on deposit in the bank and respondent advised her to invest it in government securities; that in the early part of June, 1931, Mrs. McGuire delivered the money to respondent for the purchase of a government bond; that he purchased such bond and it was left with him at the specific request of Mrs. McGuire, with the understanding that the interest therefrom should be paid to her and the principal kept intact to repay the Modern Woodmen in the event it was learned her husband was alive. Respondent

issued a receipt to her for the bond; subsequently he paid the interest due on the bond to her, and at this and other times, Mrs. McGuire complained of the poor yield on the bond and said she had been advised by Sam Livingston of the Liberty Securities Company that the money would yield ten per cent if invested with the company. She afterward directed respondent to deliver the government bond to Livingston in exchange for $700 in Livingston's bonds and $300 in cash, the latter to be used by respondent to purchase a $1000 bond of the Stevens Hotel Company. This transaction was made against the advice of respondent and on August 17, 1931, acting on specific instructions of Mrs. McGuire, and in her presence, respondent delivered the government bond to Livingston and $700 worth of Livingston's bonds were delivered to Mrs. McGuire and a credit established with Sam Livingston, or the Liberty Securities Company, for the purchase of the Stevens Hotel Company bond. The credit of $300 was not made available to respondent until the latter part of September, 1931, and the following month respondent purchased and paid $318.33 for one Stevens Hotel Company bond of a face value of $1000. This left a balance due respondent of $13.75 and the hotel bond was delivered to Mrs. McGuire. The semi-annual interest coupon on the bond became due in January, 1932, in the sum of $30, and the coupon was left with respondent to collect and deduct the amount due him. After collecting this coupon and making the deduction, respondent paid the balance of $16.25 to Mrs. McGuire, thereby satisfying her in full for all claims for money arising out of the proceeds of the insurance policy.

Respondent admits that the husband of Mrs. McGuire was found alive and that he represented her in the Modern Woodmen suit on the policy, but denies that he filed an affidavit of merits in that action with the intention to deceive the circuit court. In this regard he denies making any false statement and says the affidavit of merits does not

contain his statement that he invested the money in securities issued and sold by the Harris Trust and Savings Bank and that the same was lost as a result of the investment, and further denies making any such statement before the board of managers. On the contrary he avers the fact to be that at the time of the litigation the Stevens Hotel Company had defaulted and respondent believed, in good faith, they could not recover the money or securities, which she had loaned to her brothers. He said that under the circumstances it was his belief Mrs. McGuire's inability to repay the money was, or might be, a defense to the suit against her, and she was entitled to have such defense presented. The affidavit was not made with any attempt to misrepresent or conceal any fact which would enable the court to make a decision in the defense presented by Mrs. McGuire and there was an utter lack of intent to deceive the court. In answering the information regarding the papers filed in the bankruptcy proceeding respondent states that the petition in bankruptcy was signed by Mrs. McGuire after she had full knowledge of the facts with reference thereto; that the petition and schedules were read to her and she had ample opportunity to read them herself when he placed them before her for her signature and verification. He said Mrs. McGuire and her brother came to him after the first notice to creditors in bankruptcy proceedings was sent out. At the time she told him she did not desire bankruptcy and instructed him to dismiss the proceedings. Accordingly he prepared a petition to dismiss which Mrs. McGuire voluntarily signed with full knowledge as to its contents, as she and her brother both read the petition, and did not tell respondent that the petition was false and erroneous. He filed this petition and denied being told by either Mrs. McGuire or her brother not to file it.

The commissioner of this court to whom the matter was referred found that Mr. McGuire disappeared from his home and many months later a dead body, badly decom-

posed, was found hanging from a tree in McLean county and the body was mistakenly thought to be that of McGuire; that Mrs. McGuire retained respondent to aid her in collecting the insurance money from the Modern Woodmen; that this money was paid to her and she deposited the same in a bank in McLean, keeping it there until the forepart of June, 1931; that she then went to the office of respondent and it was suggested that she invest the same in an United States bond; that Mrs. McGuire delivered to respondent the $1000 with sufficient additional money to make the full payment of $1054.95 for the government bond; that respondent purchased the bond and kept it in his possession and gave Mrs. McGuire a receipt for same; that in August Mrs. McGuire consulted respondent with reference to changing the form of security, as she was dissatisfied with the low rate of interest and had decided to reinvest the money in securities which would return her a higher income; that she informed respondent that she had discussed other securities with one of the partners of the Liberty Securities Company of Bloomington and respondent told her he would take the matter up with one of the partners of the company; that on August 17, 1931, Mrs. McGuire and Sam Livingston, a partner of the Liberty Securities Company, came to the office of respondent and by agreement between him and Mrs. McGuire, Livingston took the $1000 government bond in exchange for $700 worth of Liberty Securities Company bonds, the remaining $300 to be paid to respondent for him to invest for Mrs. McGuire. The commissioner further found that on this date Mrs. McGuire executed a receipt to respondent acknowledging the receipt of $700 worth of Liberty Securities Company bonds and $300 left with respondent to buy a $1000 Stevens Hotel Company bond, and in the receipt she made other acknowledgments, among which was the admission that she was changing the securities as her free and voluntary act against the advice of respondent, and that she would return to him

the receipt which he had given to her for the United States bond.

The commissioner further found that after it was ascertained that the husband of Mrs. McGuire was alive, the Modern Woodmen obtained a judgment against Mrs. McGuire for $1000 and costs; that prior to the filing of the suit, Mrs. McGuire directed respondent to secure a settlement with the Modern Woodmen for the consideration of the Stevens Hotel Company bond which she held, and on June 7, 1932, she delivered the bond over to him in exchange for his receipt for the same; that Mrs. McGuire came to the office of respondent for the purpose of instituting bankruptcy proceedings in order to defeat the payment of the Modern Woodmen judgment; that she gave respondent all necessary information concerning her property, assets and liabilities, upon which he caused the petition and schedules to be drafted, which she signed a few days later; that in April, 1933, Mrs. McGuire informed respondent that she desired to have the bankruptcy proceeding dismissed, due to the fact that it was causing her much embarrassment in her home town and that there was danger of her losing her position as a rural mail carrier; that in conformity with her directions respondent drew up the petition for dismissal which she signed and verified; that after this was done Mrs. McGuire went to the office of another attorney in Bloomington and charged respondent with exchanging the $1000 United States bond for a Stevens Hotel Company bond and later, without her authority or knowledge, with filing her petition in bankruptcy.

The commissioner further reported that the evidence in the record does not establish the guilt of respondent as charged in the complaint, because it was inconceivable that Mrs. McGuire could have signed and sworn to twelve bankruptcy schedules in triplicate without knowledge of the fact that she was signing a petition in bankruptcy. It was also inconceivable, according to the commissioner, that an ex-

perienced attorney could have believed that by filing a petition in bankruptcy without the knowledge of the petitioner, he could have concealed the fact of her bankruptcy status from Mrs. McGuire for any length of time, as he knew it would be necessary for her to appear at a creditor's meeting. The commissioner reported that Mrs. McGuire had in her possession for some length of time the Stevens Hotel Company bond and if she had been unaware that the form of the security had been changed by respondent she would have reported the fact at the time she received the hotel bond.

It has been urged on this court that the receipt of August 17, 1931, for the $700 Liberty Securities Company bonds and the $300 credit, was drawn by respondent as an anticipatory defense to which he allegedly forged the signature of Mrs. McGuire. Elsewhere in the record the relator asks if this receipt could have been changed by any one after it was executed, thereby admitting that the signature of Mrs. McGuire was genuine but that the body of the receipt had been tampered with by respondent. These two viewpoints regarding the receipt are antagonistic and lend credence to the specific finding of the commissioner that Mrs. McGuire attached her signature to the receipt and that the whole receipt is hers.

The record in this case comprises 477 typewritten pages and 51 documentary exhibits. The abstract of the record comprises 142 pages and because of its inaccuracies in reflecting the record could not be relied upon by this court. The respondent should have prepared a correct abstract but we have overlooked this lapse and gone direct to the record. In so doing we have exhaustively compared the evidence respecting the charge of embezzlement and say, without the necessity of re-stating any of the voluminous evidence in detail, that the findings of the commissioner were fully warranted from the evidence.

The relator complains that the commissioner did not make specific findings, or reach a specific conclusion, re-

specting the charges that respondent filed false affidavits in the State and Federal courts. In view of the finding of the commissioner, which we uphold, there was no necessity for him to make any finding upon the question of the truth or falsity of the affidavits. The affidavit of merits by respondent states that Mrs. McGuire made investments "in securities issued and sold by the Harris Trust and Savings Bank, a substantial and leading banking institution of the city of Chicago, Illinois, and that the same was lost as a result of said investment." This affidavit is in line with the defense that the payment of the $1000 to the Modern Woodmen by Mrs. McGuire was a voluntary one, made by the joint efforts of Mrs. McGuire and respondent to settle the suit by delivering the Stevens Hotel Company bond of $1000 face value to the Modern Woodmen. Mrs. McGuire had represented to respondent that the hotel bond was all she had left of the $1000. She told him at the time the petition in bankruptcy was filed she had loaned, or given, the $700 Liberty Securities Company bonds, or the proceeds thereof, to relatives. Quite naturally the court gave this affidavit of merits little or no weight, as the manner in which Mrs. McGuire lost or disposed of the money she received from the Modern Woodmen bore no relation to whether she should pay it back. Consequently the court was not misled nor was any person injured by the filing of this affidavit. Whether the petition to dismiss the bankruptcy proceeding was false or not depends upon whether one believes the evidence supports the relator or the respondent. The commissioner who saw and heard the witnesses deliver this welter of conflicting evidence over a period of days was in a superior position to evaluate the same. The Modern Woodmen judgment was the only debt that Mrs. McGuire scheduled in the petition and it shows the sole purpose of the bankruptcy proceedings was to avoid payment of this judgment. The judgment was ultimately paid by Mrs. McGuire, in installments, and, according to

the schedule of her assets, she undoubtedly received aid outside her own resources in meeting this debt. The commissioner did not choose to believe her with reference to the alleged embezzlement and from the record we believe he was fully warranted in his conclusions. Respondent has accounted for every dollar received from Mrs. McGuire and the evidence is far from sufficient to warrant the striking of his name from the roll of attorneys.

The exceptions to the report of the commission will be stricken and the report sustained.

*Exceptions stricken and report sustained.*